## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61794-CIV-ZLOCH/ROSENBAUM

RONNA LEE CORRIVEAU,

> Plaintiff,

vs.

STARBUCKS COFFEE COMPANY,
a foreign corporation,

> Defendant.

_____/

### ORDER

This matter is before the Court upon Plaintiff's Motion to Compel Discovery [D.E. 38], pursuant to an Order of Reference entered by the Honorable William J. Zloch. [D.E. 44]. The Court has reviewed the Motion, Response, Plaintiff's Reply, and the case file, and is otherwise fully advised in the premises. The Court also heard argument from counsel at a hearing held on September 3, 2009. As the Court announced its rulings from the bench during the hearing, this Order memorializes those rulings.

### *BACKGROUND*

Plaintiff, a former employee of Defendant Starbucks Coffee Company ("Defendant" or "Starbucks"), filed a multi-count Second Amended Complaint ("Complaint") alleging that Defendant discriminated against her based upon her gender and terminated her employment in violation of the Family Medical Leave Act ("FMLA"). Specifically, Plaintiff worked as a store manager for Starbucks since April of 2004. According to the Complaint, sometime in May of 2008, Plaintiff advised her supervisor Ron Santos ("Santos") that she was pregnant. Santos, however, was later replaced by Hilary Black ("Black"), who became Plaintiff's immediate supervisor. Following

Black's replacement of Santos, Plaintiff informed Black that she was pregnant.  In August of 2008, Black terminated Plaintiff, citing store cleanliness issues, unethical labor violations, failure to adhere to expectations regarding use of hours, and violations of ethics and integrity expectations.  Plaintiff argues that Starbucks did not have any legitimate non-discriminatory reason for terminating her employment and, instead, discriminated against her.  Count I of the Complaint alleges that Starbucks unlawfully interfered with Plaintiff's rights under the FMLA.  Count II of the Complaint alleges that Plaintiff's termination constituted unlawful retaliation under the FMLA.  Finally, Count III of the Complaint alleges that Plaintiff was discharged because of her pregnancy and in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Florida Civil Rights Act of 1992 ("FCRA").  Defendant contends, however, that Plaintiff's termination did not result from any discriminatory animus, but that Defendant had legitimate business reasons for firing Plaintiff.

## *DISCUSSION*

### A.     **Motion to Compel**

Plaintiff filed the instant Motion to Compel in an effort to obtain better responses from Defendant to a number of Plaintiff's discovery requests.  More specifically, Plaintiff seeks to compel Defendant to provide more complete responses to Requests 1-11 of her Second Request for Production.  Plaintiff asserts that the discovery at issue is necessary to assist in the prosecution of her claims.  In response, Defendant contends that the discovery requests are overly broad, seek irrelevant information, or impose an undue burden on Defendant.

The Court's consideration of Plaintiff's motion seeking to compel discovery begins with a review of the scope of discovery under Rule 26(b), Fed. R. Civ. P.  Rule 26(b), Fed. R. Civ. P., sets forth the permissible parameters of discovery.  Under that rule,

> Parties may obtain discovery regarding any matter, not privileged,
> that is relevant to the claim or defense of any party . . . [that] appears

> reasonably calculated to lead to the discovery of admissible evidence . . . , [as long as the Court does not find that] (i) the discovery sought is unreasonably cumulative or duplicative, or . . . obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. . . ."

R. 26(b), Fed. R. Civ. P.  The Advisory Committee Notes to Rule 26 indicate that "[t]he purpose of discovery is to allow a **broad** search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case."  Adv. Com. Notes, 1946 Amendment, R. 26, Fed. R. Civ. P. (citations omitted) (emphasis added).  Indeed, the Advisory Committee Notes approvingly cite language from a case stating that "the Rules . . . permit 'fishing for evidence as they should.'"  *Id.* (citation omitted).

The courts have long recognized the wide scope of discovery allowed under the Federal Rules of Civil Procedure.  As the Eleventh Circuit's predecessor court noted,

> The discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize concise factual issues for trial. Properly used, they prevent prejudicial surprises and conserve precious judicial energies.  The United States Supreme Court has said that they are to be broadly and liberally construed.

*Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973)[1] (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); *Schlagenhauf v. Holder*, 379 U.S. 104, 114-115 (1964)).  Of course, the scope of permissible discovery is not unbounded.  Requested discovery must be relevant, and it must not

---

[1] Pursuant to *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

impose an undue burden, under the tests described in Rule 26(b)(2)(C).

The Court will set forth the discovery requests in dispute, followed by the rulings made by the Court from the bench during the September 3, 2009, hearing. For further convenience, the Court groups the interrelated discovery requests for discussion.

**Request for Production 1**

Request for Production 1 seeks "all performance reviews and evaluations" for a list of thirty-one store managers[2] from the date of hire for each store manager through the end of each store manager's employment with Defendant (if no longer employed by Defendant) or through the present (if currently employed by Defendant). Defendant objects to the request as overly broad and unduly burdensome to the extent that it seeks information concerning periods of time when any of the 31 Store Managers reported to a district manager other than Hilary Black. Notwithstanding its objection, Starbucks produced performance reviews and evaluations conducted by Black for each of the 31 Store Managers.

During the September 3, 2009 hearing, the Court inquired into the relevance of the performance evaluations conducted by supervisors other than Black. Plaintiff's counsel emphasized that in its Motion for Summary Judgment, Defendant cited to certain evaluations of Plaintiff authored by supervisors other than Black. Plaintiff argues that in order to rebut Defendant's contentions that it terminated Plaintiff for legitimate, non-discriminatory reasons, she seeks similar reviews completed relating to other store managers as "comparator" information. Defense counsel argued that Plaintiff was terminated because she did not meet Black's expectations, and, thus, any

---

[2] The list of thirty-one individuals constitutes the names of all Starbucks store managers who, at any point in time, have ever worked under Hilary Black as their District Manager. For convenience purposes, these individuals will be referred to as the "31 Store Managers."

evaluations completed by anyone other than Black are not relevant.  Defendant also emphasized that the performance evaluations of Plaintiff that were completed by other supervisors were included in the Motion for Summary Judgment only as background information.

After reviewing the Statement of Undisputed Facts In Support of Defendant's Motion for Summary Judgment, the Court noted that throughout the document, Defendant cited to the lack of store cleanliness as well as other alleged performance deficiencies of Plaintiff.  The Court found that although Black was the final decision maker with respect to Plaintiff's termination, Defendant's Motion for Summary Judgment makes it appear as though Black relied, at least in part, on the evaluations completed by other supervisors in making her final decision to terminate Plaintiff. Indeed, no other reason can explain why Defendant included quotations of and other references to specific comments from the evaluations conducted by district managers other than Black in Defendant's Statement of Undisputed Material Facts.  If something is a material fact, by definition, it constitutes more than mere background information.  As a result, the Court concluded that the documents sought by Plaintiff are relevant to Defendant's defenses under the broad definition of relevance in Rule 26(b), Fed. R. Civ. P.  More specifically, such information is relevant to a determination of pretext in this matter.  Indeed, if any of the other 31 Store Managers received reviews similar to Plaintiff's and can be deemed to be comparators, this information is relevant to whether Defendant's reasons for terminating Plaintiff were legitimate or merely pretextual.

Thus, the Court directed Defendant to provide Plaintiff with responsive documents that are dated from June 2006 through the present since this is the relevant time frame during which Black was a district manager for Starbucks.  Accordingly, Plaintiff's Motion to Compel is granted in part and denied in part with respect to Request 1 as set forth above.

**Request for Production 2**

Request for Production 2 seeks all "corrective actions, warnings, notices, Partner Action Notices, and reprimands" that have ever been issued for the 31 Store Managers. Defendant again objects to the request as overly broad and unduly burdensome to the extent that it seeks information concerning periods of time when any of the 31 Store Managers reported to a district manager other than Hilary Black. Defendant also objects to the request on the grounds that the term "notice" is vague and because Partner Action Notices contain information that is not relevant to any of the issues related to this litigation. More specifically, Defendant asserts that the Partner Action Notices contain personal information, information on merit increases and promotions, expatriate assignments, and information on bonuses. Notwithstanding its objection, Starbucks produced Partner Action Notices documenting the termination of employment of all store managers who were fired by Black. Starbucks also produced all known Corrective Action Forms issued by Black to any of the 31 Store Managers.

During the September 3, 2009, hearing, Plaintiff argued that the documents sought are relevant to determine why other store managers were terminated or, conversely, received merit increases. Plaintiff contends that if any of the other 31 Store Managers received similar negative reviews or comments on the forms requested, but were not fired, this information constitutes relevant comparator information. Plaintiff also asserts that if these store managers received negative reviews that were comparable to those of Plaintiff, yet they were rewarded with raises or bonuses, this information would support a finding of pretext. Plaintiff did acknowledge that Defendant had already provided training and hours reports, but stated that the documents did not identify the store locations to which they pertained. In response, counsel for Defendant stated that he would provide additional information to Plaintiff to allow her to identify the store locations. With respect to the

Partner Action forms, counsel for Defendant argued that because the instant lawsuit does not allege a failure to hire or promote, it is not relevant whether any other store managers were given a raise or a bonus. According to Defendant, what is relevant is whether other store managers were performing similarly, but were not terminated.

After hearing argument from counsel, the Court noted that a Confidentiality Agreement is currently in place and, thus, any potentially sensitive information in the requested documents would be adequately protected. Additionally, the Court found that under the broad scope of discovery, the documents requested are relevant to the claims and defenses of the case. The Court agreed that if one or more of the other 31 Store Managers received similar negative comments or corrective action forms, but then were not terminated or, instead received a raise or promotion, this information could establish that the reasons Defendant fired Plaintiff were pretextual. Indeed, such documents would tend to refute Defendant's contention that Plaintiff was fired for failing to meet Black's expectations. Thus, the Court directed Defendant to provide all responsive documents for the time frame January of 2007 through the present.[3] Accordingly, Plaintiff's Motion to Compel is granted in part and denied in part with respect to Request 2 as set forth above.

**Request for Production 3**

Request for Production 3 seeks "all daily roster sheets" from the stores of the 31 Store Managers from their dates of hire through the ends of their employment with Defendant (if no longer employed by Defendant) or through the present (if currently employed by Defendant). Defendant objects to the request as overly broad and unduly burdensome to the extent that it seeks information concerning periods of time when any of the 31 Store Managers reported to a district

---

[3]   Plaintiff proposed to limit the temporal scope of her request to January 1, 2007, though the present.

manager other than Hilary Black. Defendant also states that it would require an extensive and time-consuming review of a number of boxes of documents to produce the requested daily roster sheets.

During the hearing, Defendant emphasized that Plaintiff was not terminated for information contained in or missing from any Daily Duty Roster and, as such, the documents requested are not relevant. Instead, Defendant asserted that Plaintiff was terminated for ethics and integrity issues because she lied about filling out the Daily Duty Rosters. Defendant also pointed out that it would be quite burdensome to produce the requested documents. Indeed, counsel explained that the store managers send the Daily Duty Rosters to Iron Mountain (a document retention facility) in Seattle every six months. According to Defendant, Iron Mountain tears papers out of the Daily Duty Rosters and places the papers in bankers' boxes labeled by state and date of receipt. Hence, all of Starbucks' Florida store locations are co-mingled in the same boxes such that it would be time consuming and expensive to review all of the papers in each box to locate papers relating to the particular stores associated with the 31 Store Managers.

In response to Defendant's burdensomeness objection, Plaintiff agreed to limit the request to the three-month period from June of 2008 through August of 2008 when Black supervised Plaintiff (*i.e.*, just prior to her termination). Plaintiff emphasized that Defendant referred to the Daily Duty Rosters in its Motion for Summary Judgment when it pointed out that in January of 2006, Plaintiff's then-supervisor (Hughes) advised Plaintiff to "keep up [the] Duty Roster Notebook use." Plaintiff argued that a review of the 31 Store Managers' Daily Duty Rosters would provide a glimpse of what Defendant expected of other store managers in the way of filling out the Daily Duty Rosters. As Plaintiff explained – and Defendant conceded, the Daily Duty Rosters contain extensive lists, and, frequently, store managers do not fill them out entirely. In the case of the Daily Duty Roster that Plaintiff allegedly lied about filling out – one of the reasons set forth by Defendant for Plaintiff's

firing, a substantial portion of the Daily Duty Roster had been completed. Consequently, if Plaintiff's preparation of the Daily Duty Roster in question compares favorably with other store managers' completions of their Daily Duty Rosters, a fact-finder could conclude that while not filled out entirely, the Daily Duty Roster in question was sufficiently prepared to have supported Plaintiff's statement that she filled it out. Indeed, Plaintiff argues that under such a circumstance, she could be deemed to have substantially completed the Daily Duty Roster or completed it in a fashion similar to the other store managers, and it would not have been unreasonable for her to believe that the way she filled out the Daily Duty Roster in question was acceptable.

After hearing from both parties, the Court announced that it found the requested documents to be relevant to the case, particularly in light of Defendant's reliance on the Daily Duty Rosters in its Motion for Summary Judgment. The Court agreed that if the 31 Store Managers completed the Daily Duty Rosters in a manner similar to Plaintiff, but were not reprimanded or ultimately fired, this information would have bearing on Plaintiff's claims. The Court, however, found that it would be sufficient for Plaintiff to review one week's worth of Daily Duty Rosters in order to make the relevant comparison. Hence, the Court directed Defendant to produce responsive documents for the period of August 11-17, 2008.

Further, when Defendant suggested that Plaintiff fly to Seattle to review the boxes of potentially responsive documents, the Court declined. Instead, the Court directed Defendant either to provide the boxes of documents for Plaintiff to review in South Florida or to file a statement with the Court regarding an estimate of the reasonable amount of time it would take to sort through the boxes to produce the responsive documents. In this regard, the Court directed Defendant to file an affidavit by September 4, 2009, indicating the amount of time and the cost associated with pulling the responsive documents.

On September 4, 2009, Defendant filed a Notice Regarding Duty Roster Notebooks. [D.E. 48]. In the Notice, Defendant stated that rather than shipping the bankers' boxes to Florida for Plaintiff's review and copying, Defendant would gather, copy, and produce the responsive documents in accordance with the request as modified by the Court during the hearing. Accordingly, Plaintiff's Motion to Compel is granted in part and denied in part with respect to Request 3 as set forth above.

**Requests for Production 4, 6, 7, and 10**

Requests for Production 4, 6, 7, and 10 seek all "weekly labor recaps," "hourly partner time sheets," "payroll summary reports," and "time and attendance audit reports" for each of the stores of the 31 Store Managers from their dates of hire through the terminations of their employment with Defendant (if no longer employed by Defendant) or through the present (if currently employed by Defendant). Defendant objects to the request as overly broad and unduly burdensome to the extent that it seeks information concerning periods of time when any of the 31 Store Managers reported to a district manager other than Hilary Black. Defendant also points out that Plaintiff was not terminated for information contained in a weekly labor recap or any of the other listed documents. Rather, according to Defendant, Black fired Plaintiff for unethical labor violations regarding the use of 1,100 training hours in the third quarter of the last fiscal year at her store.

During the hearing, counsel for Plaintiff stated that a review of the requested documents as they pertained to the other 31 Store Managers was necessary to determine the number of training hours claimed by other store managers as compared to Plaintiff. Plaintiff asserted that she also needed to determine whether any of the other managers were accused of fraud as a result of the number of training hours claimed. Defendant responded that Black was the sole enforcer of the rules with respect to Plaintiff and, therefore, the issue of training hours does not relate to any of Plaintiff's

other supervisors.  Defendant also emphasized that Black pulled only one quarter of payroll summary reports and hourly partner time sheets to determine how many training hours Plaintiff claimed during that time frame.  In addition, Defendant pointed out that Black only investigated reports for only Plaintiff and another store manager (Ronnie Reed), due to the exorbitant number of training hours claimed by each.  To refute Defendant's contention that no other store managers logged a large number of training hours, Plaintiff listed additional stores that recorded over 500 hours of training hours in certain fiscal years.  According to Plaintiff these stores include the Aventura Mall, R.K. Plaza, Biscayne & 191st, 3200 Hollywood Blvd., and Keystone Plaza stores.

The Court noted that in order to emphasize the disproportionate number of training hours claimed by Plaintiff, Defendant asserts in footnote 8 of its Motion for Summary Judgment that most of the stores that Black oversaw averaged 50-75 training hours per quarter in contrast to the over 1,000 hours logged by Plaintiff's store.  Based upon Defendant's assertion that the training hours recorded by Plaintiff differed vastly from those submitted by the other store managers, and in view of Plaintiff's contrasting assertion that other stores recorded higher numbers of training hours, the Court found the documents sought in response to Requests 4, 6, 7, and 10 to be relevant.  Indeed, if Plaintiff's contention that other stores logged more than 500 hours is correct, such a fact could raise the question as to why other store managers' training hours were not investigated by Defendant. Based on the finding of relevancy, the Court directed Defendant to provide Plaintiff with responsive documents for the five stores identified by Plaintiff's counsel during the hearing for the period of time from January 2007 through the present.[4]  Accordingly, Plaintiff's Motion to Compel is granted

---

[4]     Although counsel for Defendant stated that he was unsure what was meant by the use of the term "weekly labor recap," Plaintiff agreed to provide Defendant with a copy of a sample "weekly labor recap" so that Defendant could determine with precision the type of document sought by Plaintiff.

in part and denied in part with respect to Requests 4, 6, 7, and 10, as set forth above.

**_____Request for Production 9**

Request for Production 9 seeks all "customer snapshot reports" from each of the stores of the 31 Store Managers from their dates of hire through the ends of their employment with Defendant (if no longer employed by Defendant) or through the present (if currently employed by Defendant). Defendant objects to the request as overly broad and unduly burdensome to the extent that it seeks information concerning periods of time when any of the 31 Store Managers reported to a district manager other than Hilary Black. Defendant also objects to the request, stating that the term "summaries" is vague and further asserting that the documents sought are not relevant because Plaintiff was not terminated for information contained in a customer snapshot report.

During the hearing, Plaintiff's counsel argued that because Defendant relied on various customer snapshot reports in its Motion for Summary Judgment, such reports are relevant to the case, and Plaintiff should be able to refute Defendant's assertions. Defendant again argued that Black did not rely on the customer snapshot reports to fire Plaintiff. The Court, however, agreed with Plaintiff and found that Defendant relied on the reports in various places in its Motion for Summary Judgment. As such, for the same reasons set forth with respect to Request 1, the Court agreed that the documents were relevant to the defense of Plaintiff's claims. Thus, the Court directed Defendant to produce responsive documents for all 31 Store Managers' stores for the time period January of 2007 through the present. Accordingly, Plaintiff's Motion to Compel is granted in part and denied in part with respect to Request 9 as set forth above.

**_____Requests for Production 5, 8, and 11**

Although Plaintiff initially sought to compel better responses to these discovery requests,

during the September 3, 2009, hearing on this matter, Plaintiff's counsel ultimately withdrew the Motion to Compel with respect to Requests 5, 8, and 11.  Accordingly, the Court announced that it would deny Plaintiff's Motion to Compel as moot with respect to Requests for Production 5, 8, and 11.

**B.**      **Requests for Attorneys' Fees**

Plaintiff seeks an award of attorneys' fees with respect her Motion to Compel.  Plaintiff argues that she made a good-faith attempt to obtain the discovery requested without a motion to compel.  She also asserts that Defendant's objections to the discovery requests are not supported by the facts and, therefore, Plaintiff seeks the attorneys' fees incurred in filing the Motion to Compel. On the other hand, Defendant argues that its objections were substantially justified and that Plaintiff's request for fees should be denied.

Federal Rule of Civil Procedure 37(a)(4) provides that the Court shall require reasonable expenses incurred in making the motion, including attorney's fees, to be paid by the opposing party, unless the opposing party's opposition to the protective order was "substantially justified, or that other circumstances make an award of expenses unjust."  "The Supreme Court has clarified that [a party's] discovery conduct should be found 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Devaney v. Continental Amer. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)); *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997).

The Court finds that an award of fees is not appropriate under the circumstances because the parties were substantially justified in their actions.  In this regard, reasonable people could differ as to the appropriateness of the parties' actions.  For these reasons, the Court will deny Plaintiff's

request for attorneys' fees.

## *CONCLUSION*

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion to Compel Discovery [D.E. 38] is **GRANTED IN PART AND DENIED IN PART** as set forth herein.  Unless set forth otherwise herein, Defendant shall provide all compelled discovery responses by no later than **September 10, 2009**.[5]  Further, as noted above, the Court denies Plaintiff's request for an award of attorneys' fees.

**DONE** and **ORDERED** at Fort Lauderdale, Florida this 9th day of September, 2009.

ROBIN S. ROSENBAUM
United States Magistrate Judge

cc:    Honorable William J. Zloch
       Counsel of Record

---

[5]    The Court did note, however, that if Judge Zloch grants the parties' pending Motion to Continue, the time for Defendant to produce the responsive documents shall be extended and due either in an additional 2 weeks, or in half of the amount of time of any trial extension, whichever is less.